<u>**NOT FOR PUBLICATION**</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES INVESTOR PROTECTION CORPORATION, | No. 08-01789 (CGM) |
| Plaintiff-Applicant, | SIPA LIQUIDATION |
| v. | (Substantively Consolidated) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | |
| Defendant. | |

In re:

BERNARD L. MADOFF,

Debtor.

| | |
|---|---|
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | Adv. Pro. No. 12-01693 (CGM) |
| v. | |
| Banque Lombard Odier & Cie SA, | |
| Defendant. | |

**MEMORANDUM DECISION DENYING DEFENDANT'S MOTION TO DISMISS**

<u>**A P P E A R A N C E S**</u>:

*Attorneys for Irving H. Picard, Trustee for the Substantively Consolidated SIPA Liquidation of Bernard L. Madoff Investment Securities LLC and the Chapter 7 Estate of Bernard L. Madoff*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
By:    Torello Calvani (via Zoom)

*Counsels for Defendant Banque Lombard Odier & Cie SA*
Mayer Brown LLP

1999 K Street NW
Washington, DC 20006
By:    Mark Hanchet (via Zoom)
-and-
Allegaert Berger & Vogel LLP
111 Broadway, 20th Flr.
New York, NY 10006
By:    Jack Zulack (via Zoom)

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is Defendant's, Banque Lombard Odier & Cie SA's ("Lombard Odier"), motion to dismiss the complaint of Irving Picard, the trustee ("Trustee") for the liquidation of Bernard L. Madoff Investment Securities LLC ("BLMIS") seeking to recover subsequent transfers allegedly consisting of BLMIS customer property.  Lombard Odier seeks dismissal for lack of personal jurisdiction, for failure to plead a cause of action due to improper adoption by reference; for failure to state a claim due to the safe harbor provision of the Bankruptcy Code, and for failure to allege that it received BLMIS customer property.  For the reasons set forth herein, the motion to dismiss is denied in its entirety.

## <u>Jurisdiction</u>

This is an adversary proceeding commenced in this Court, in which the main underlying SIPA proceeding, Adv. Pro. No. 08-01789 (CGM) (the "SIPA Proceeding"), is pending.  The SIPA Proceeding was originally brought in the United States District Court for the Southern District of New York (the "District Court") as *Securities Exchange Commission v. Bernard L. Madoff Investment Securities LLC et al.*, No. 08-CV-10791, and has been referred to this Court. This Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b) and (e)(1), and 15 U.S.C. § 78eee(b)(2)(A) and (b)(4).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O). This Court

has subject matter jurisdiction over these adversary proceedings pursuant to 28 U.S.C. §§

1334(b) and 157(a), the District Court's Standing Order of Reference, dated July 10, 1984, and

the Amended Standing Order of Reference, dated January 31, 2012. In addition, the District

Court removed the SIPA liquidation to this Court pursuant to SIPA § 78eee(b)(4), (*see* Order,

Civ. 08– 01789 (Bankr. S.D.N.Y. Dec. 15, 2008) ("Main Case"), at ¶ IX (ECF No. 1)), and this

Court has jurisdiction under the latter provision. Personal jurisdiction has been contested by this

Defendant and will be discussed *infra*.

### Background

The Court assumes familiarity with the background of the BLMIS Ponzi scheme and its

SIPA proceeding.

This adversary proceeding was filed on June 6, 2012. (Compl., ECF[1] No. 1). Via the

complaint ("Complaint"), the Trustee seeks to recover subsequent transfers made to Lombard

Odier, a limited partnership with a place of business in Switzerland. (*Id.* ¶ 22). The subsequent

transfers were derived from investments with BLMIS made by other funds, including: Fairfield

Sentry Limited ("Fairfield Sentry"). (*Id.* ¶ 2). These funds are referred to as "feeder funds"

because the intention of the fund was to invest in BLMIS. (*Id.* ¶ 2).

Following BLMIS's collapse, the Trustee filed an adversary proceeding against Fairfield

Sentry and related defendants to avoid and recover fraudulent transfers of customer property in

the amount of approximately $3 billion. (*Id.* ¶ 35). In 2011, the Trustee settled with Fairfield

Sentry. (*Id.* ¶ 40). As part of the settlement, Fairfield Sentry consented to a judgment in the

amount of $3.054 billion (Consent J., 09-01239-cgm, ECF No. 109) but repaid only $70 million

---

[1] Unless otherwise indicated, all references to "ECF" are references to this Court's electronic docket in adversary proceeding 12-01693-cgm.

to the BLMIS customer property estate.  The Trustee then commenced a number of adversary proceedings against subsequent transferees like Defendant to recover the approximately $3 billion in missing customer property.

In its motion to dismiss, Lombard Odier argues that the safe harbor bars the Trustee's recovery of this transfer, the Trustee has failed to allege that it holds BLMIS customer property, that this Court lacks personal jurisdiction, and that the Trustee has improperly used adoption by reference.  The Trustee opposes the motion to dismiss.

## Discussion

**Personal Jurisdiction**

Defendant objects to the Trustee's assertion of personal jurisdiction.  In the Complaint, the Trustee argues that Defendant purposefully availed itself of the laws of the United States and New York.  (Compl. ¶¶ 6–8).

To survive a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the Trustee "must make a prima facie showing that jurisdiction exists."  *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 342 (2d Cir. 2018) (quoting *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 34–35 (2d Cir. 2010)).  A trial court has considerable procedural leeway when addressing a pretrial dismissal motion under Rule 12(b)(2). *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013).  "'It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion.'" *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)); *see also Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018) (same).

"Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction." *Dorchester Fin.*, 722 F.3d at 84–85 (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)); *Picard v. Fairfield Greenwich Grp.* (*In re Fairfield Sentry Ltd.*), 627 B.R. 546, 565 (Bankr. S.D.N.Y. 2021) (same).   In this case, the Trustee has alleged legally sufficient allegations of jurisdiction simply by stating that Lombard Odier "knowingly directing funds to be invested with New York-based BLMIS."  This allegation alone is sufficient to establish a prima facie showing of jurisdiction over Defendant in the pre-discovery stage of litigation—but as will be made clear, this was not the only allegation made by the Trustee.  At the pre-discovery stage, the allegations need not be factually supported.  *See Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013) (an averment of facts is necessary only after discovery).

In order to be subjected to personal jurisdiction in the United States, due process requires that a defendant have sufficient minimum contacts with the forum in which defendant is sued "'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501 (Bankr. S.D.N.Y. 2012), 480 B.R. 501, 516 (Bankr. S.D.N.Y. 2012) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  The pleadings and affidavits are to be construed "'in the light most favorable to the plaintiffs, resolving all doubts in their favor.'"  *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 187 (Bankr. S.D.N.Y. 2018).

The Supreme Court has set out three conditions for the exercise of specific jurisdiction over a nonresident defendant.   First, the defendant must have

purposefully availed itself of the privilege of conducting activities within the forum State or have purposefully directed its conduct into the forum State. Second, the plaintiff's claim must arise out of or relate to the defendant's forum conduct.    Finally, the exercise of jurisdiction must be reasonable under the circumstances.

*U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).

**Purposeful Availment**

"[M]inimum contacts . . . exist where the defendant purposefully availed itself of the privilege of doing business in the forum and could foresee being haled into court there." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 82 (2d Cir. 2018).  "Although a defendant's contacts with the forum state may be intertwined with its transactions or interactions with the plaintiff or other parties, a defendant's relationship with a third party, standing alone, is an insufficient basis for jurisdiction."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150 (2d Cir. 2019) (cleaned up).  "It is insufficient to rely on a defendant's random, fortuitous, or attenuated contacts or on the unilateral activity of a plaintiff with the forum to establish specific jurisdiction." *Id.*

A party "purposefully avail[s] itself of the benefits and protections of New York laws by knowing, intending and contemplating that the substantial majority of funds invested in Fairfield Sentry would be transferred to BLMIS in New York to be invested in the New York securities market." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 517 (Bankr. S.D.N.Y. 2012).

Lombard Odier argues that the Trustee has not alleged that it has sufficient contacts with New York.  The Complaint suggests otherwise.  In the Complaint, the Trustee alleges that Lombard Odier "knowingly directed funds to be invested with New York-based BLMIS through [Fairfield Sentry]." (Compl. ¶ 6).  The Trustee has also alleged that Fairfield Sentry invested

almost all of its assets in BLMIS.  *See* 09-1239 Compl. ¶ 228 ("Under Fairfield Sentry's offering

memorandum, the fund's investment manager was required to invest no less than 95% of the

fund's assets through BLMIS.") (adopted by reference, at paragraph 35, of this Complaint); *see,*

*e.g.*, Calvani Decl., Private Placement Memorandum, Ex. 15, ECF No. 101 ("As a result of the

Investment Manager's selection of Bernard L. Madoff Investment Securities, LLC ('BLM') as

execution agent of the split strike conversion strategy, ***substantially all of the Fund's assets***

***will be held in segregated accounts at BLM, a U.S. registered broker-dealer*** and qualified

custodian. Accordingly, BLM will be a sub-custodian of the Fund.") (emphasis added).

The Trustee has submitted additional evidence in response to the motion to dismiss: a

copy of Bernard L. Madoff's ("Madoff") calendar indicating that high level executives of

Lombard Odier met directly with Madoff in 2002 and 2008 in his New York City office.

Calvani Decl., Ex. 17–19, ECF No. 101.  At least one meeting, took place directly after a

meeting between Madoff and "Tucker."  Calvani Decl., Ex. 17, ECF No. 101.  Discovery may

uncover whether this "Tucker" is Jeffrey Tucker, an insider of Fairfield Sentry.  The evidence

that Lombard Odier executives met with Madoff in his New York City office supports the

Trustee's allegations that Defendant intentionally directed its investment to New York-based

BLMIS, through Fairfield Sentry.  (Compl. ¶ 6).

The Trustee also alleges that Lombard Odier directed its investments into Fairfield Sentry

and Fairfield Sigma, which are managed by the New York partnership, Fairfield Greenwich

Group.  (Compl. ¶ 7).  Defendant allegedly sent its subscription agreement to FGG's New York

office, communicated with FGG employees located in New York via mail and email, wired

money through a New York-based bank account and derived significant revenue from New

York.  (Compl. ¶ 7).  These allegations are legally sufficient to constitute a prima facie showing

of jurisdiction. *Dorchester Fin. Securities Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d. Cir. 2013).

"[A]lthough physical presence in the forum is not a prerequisite to jurisdiction, physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). "[Defendant] intentionally tossed a seed from abroad to take root and grow as a new tree in the Madoff money orchard in the United States and reap the benefits therefrom." *Picard v. Bureau of Labor Ins.* (*In re BLMIS*), 480 B.R. 501, 506 (Bankr. S.D.N.Y. 2012). Defendant's alleged contacts with New York are not random, isolated, or fortuitous.

**Arise out of or relate to the defendant's forum conduct**

As to the second prong, the suit must "arise out of *or relate to* the defendant's contacts with the forum." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, __ U.S. __, 141 S. Ct. 1017, 1026, 209 L. Ed. 2d 225 (2021) (emphasis in original). "[P]roof that a plaintiff's claim came about because of the defendant's in-state conduct" is not required. *Id.* at 1027. Instead, the court need only find "an affiliation between the forum and the underlying controversy." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Where the defendant's contacts with the jurisdiction that relate to the cause of action are more substantial, however, it is not unreasonable to say that the defendant is subject to personal jurisdiction even though the acts within the state are not the proximate cause of the plaintiff's injury.") (internal quotations omitted).

Here, the Trustee is asserting subsequent transfer claims against Defendant for monies it received from the Fairfield Funds. (Compl. ¶¶ 54–58). These allegations are directly related to

its investment activities with Fairfield and BLMIS. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 191 (Bankr. S.D.N.Y. 2018) (finding that the redemption and other payments the defendants received as direct investors in a BLMIS feeder fund arose from the New York contacts such as sending subscription agreements to New York, wiring funds in U.S. dollars to New York, sending redemption requests to New York, and receiving redemption payments from a Bank of New York account in New York, and were the proximate cause of the injuries that the Trustee sought to redress).

The suit is affiliated with the alleged in-state conduct. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

**Reasonableness**

Having found sufficient minimum contacts, the Court must determine if exercising personal jurisdiction over the Defendant is reasonable and "comport[s] with fair play and substantial justice." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (internal quotations omitted). Factors the Court may consider include the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

The exercise of jurisdiction is reasonable. Defendant is not burdened by this litigation. Defendant has actively participated in this Court's litigation for over ten years. It is represented by U.S. counsel, and "irrevocably" submitted to the jurisdiction of New York courts' when it signed its subscription agreements with the Fairfield Funds.[2] The forum and the Trustee both

---

[2] Even though this Court held that the Defendant's consent to jurisdiction in New York courts contained in the subscription agreements it signed prior to investing with Fairfield Sentry could not be used as the sole basis for this

have a strong interest in litigating BLMIS adversary proceedings in this Court. *Picard v. Maxam Absolute Return Fund, L.P. (In re BLMIS)*, 460 B.R. 106, 117 (Bankr. S.D.N.Y. 2011), *aff'd*, 474 B.R. 76 (S.D.N.Y. 2012); *Picard v. Chais (In re BLMIS)*, 440 B.R. 274, 278 (Bankr. S.D.N.Y. 2010); *Picard v. Cohmad Sec. Corp. (In re BLMIS)*, 418 B.R. 75, 82 (Bankr. S.D.N.Y. 2009); *Picard v. Fairfield Greenwich Grp., (In re Fairfield Sentry Ltd.)*, 627 B.R. 546, 568 (Bankr. S.D.N.Y. 2021); *see also In re Picard*, 917 F.3d 85, 103 (2d Cir. 2019) ("The United States has a compelling interest in allowing domestic estates to recover fraudulently transferred property.").

Defendant argues that the Trustee is required to demonstrate jurisdiction over each of the subsequent transfers. Compl., ex. C (showing 131 transfers from Fairfield Sentry to Defendant); id., ex. E (showing four transfers from Fairfield Sigma to Defendant); *see also Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 190 (Bankr. S.D.N.Y. 2018) ("Each transfer is a separate claim and the Trustee must establish the court's jurisdiction with respect to each claim asserted.") (cleaned up). By alleging that Defendant intentionally invested in BLMIS, the Trustee has met his burden of alleging jurisdiction as to each subsequent transfer that originated with BLMIS.

The Trustee has made a prima facie showing of personal jurisdiction with respect to all of the Fairfield Funds subsequent transfers at issue in this Complaint.

**12(b)(6) standard**

"To survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

---

Court's exercise of personal jurisdiction over an action by foreign liquidators to recover redemption payments under British Virgin Island law, the fact that Defendant agreed to submit to the jurisdiction of this Court is certainly a relevant factor in determining whether the exercise of jurisdiction over Defendant is reasonable. *In Fairfield Sentry v. Theodoor GGC Amsterdam (In re Fairfield Sentry Ltd.)*, Case No. 10-13164 (SMB), Adv. No. 10-03496 (SMB), 2018 WL 3756343, at *12 (Bankr. S.D.N.Y. Aug. 6, 2018) ("Defendants' consent to the Subscription Agreement does not constitute consent to personal jurisdiction in the U.S. Redeemer Actions.").

662, 678 (2009) (cleaned up).  The claim is facially plausible when a plaintiff pleads facts that

allow the Court to draw a "reasonable inference that the defendant is liable for the misconduct

alleged." *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 556 (2007) ("Asking for plausible grounds to infer an agreement does

not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise

a reasonable expectation that discovery will reveal evidence of illegal agreement.").  In deciding

a motion to dismiss, the Court should assume the factual allegations are true and determine

whether, when read together, they plausibly give rise to an entitlement of relief. *Iqbal*, 556 U.S.

at 679.  "And, of course, a well-pl[ed] complaint may proceed even if it strikes a savvy judge

that actual proof of those facts is improbable, and that a recovery is very remote and unlikely."

*Twombly*, 550 U.S. at 556.

In deciding the motion, "courts must consider the complaint in its entirety, as well as

other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in

particular, documents incorporated into the complaint by reference, and matters of which a court

may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322

(2007).  A complaint is "deemed to include any written instrument attached to it as an exhibit[,] .

. . documents incorporated in it by reference[,]" and other documents "integral" to the complaint.

*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) (citations omitted).  A

document is "integral" to a complaint when the plaintiff has "actual notice" of the extraneous

information and relied on it in framing the complaint. *DeLuca v. AccessIT Grp., Inc.*, 695 F.

Supp. 2d 54, 60 (S.D.N.Y. 2010) (citing *Chambers*, 282 F.3d at 153).

The Trustee is seeking to recover subsequent transfers made to Lombard Odier by

Fairfield Sentry ("Count One").

**Count One: Recovery of Subsequent Transfers**

Section 550(a) of the Bankruptcy Code states:

Except as otherwise provided in this section, to the extent that a transfer is
avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a) of this title, the
trustee may recover, for the benefit of the estate, the property transferred, or, if the
court so orders, the value of such property, from--
(1) the initial transferee of such transfer or the entity for whose benefit such
transfer was made; or
(2) any immediate or mediate transferee of such initial transferee.

"To plead a subsequent transfer claim, the Trustee must plead that the initial transfer is

avoidable, and the defendant is a subsequent transferee of that initial transferee, that is, that the

funds at issue originated with the debtor." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018); *see also SIPC v. BLMIS* (*In re Consolidated Proceedings on

11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *7 (S.D.N.Y. Apr. 15, 2013)

(consolidated proceedings on 11 U.S.C. § 546(e)).  "Federal Civil Rule 9(b) governs the portion

of a claim to avoid an initial intentional fraudulent transfer and Rule 8(a) governs the portion of a

claim to recover the subsequent transfer. *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R.

167, 195 (Bankr. S.D.N.Y. 2018) (citing *Sharp Int'l Corp. v. State St. Bank & Trust Co.,* (*In re

Sharp Int'l Corp.*), 403 F.3d 43, 56 (2d Cir. 2005) and *Picard v. Legacy Capital Ltd. (In re

BLMIS)*, 548 B.R. 13, 36 (Bankr. S.D.N.Y. 2016), *rev'd on other grounds*, *Picard v. Citibank,

N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).

To properly plead a subsequent transfer claim, the Trustee need only provide "a short and

plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P.

8(a)(2).  "The plaintiff must allege the necessary vital statistics—the who, when, and how much–

of the purported transfers to establish an entity as a subsequent transferee of the funds. However, the plaintiff's burden at the pleading stage does not require dollar-for-dollar accounting of the exact funds at issue." *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195 (Bankr. S.D.N.Y. 2018). While the Trustee must allege that the initial transfer from BLMIS to Fairfield Sentry is avoidable, he is not required to avoid the transfer received by the initial transferee before asserting an action against subsequent transferees. The Trustee is free to pursue any of the immediate or mediate transferees, and nothing in the statute requires a different result. *IBT Int'l, Inc. v. Northern* (*In re Int'l Admin. Servs., Inc.*), 408 F.3d 689, 706-07 (11th Cir. 2005).

The Trustee pleaded the avoidability of the initial transfer (from BLMIS to Fairfield Sentry) by adopting by reference the entirety of the complaint filed against Fairfield Sentry in adversary proceeding 09-1239 ("Fairfield Complaint"). (Compl. ¶ 35). Whether the Fairfield Complaint properly pleads the avoidability of the initial transfer, is governed by Rule 9(b). Rule 9(b) states: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Where the actual fraudulent transfer claim is asserted by a bankruptcy trustee, applicable Second Circuit precedent instructs courts to adopt a more liberal view since a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge. Moreover, in a case such as this one, where the Trustee's lack of personal knowledge is compounded with complicated issues and transactions that extend over lengthy periods of time, the trustee's handicap increases, and even greater latitude should be afforded." *Picard v. Cohmad Secs. Corp., (In re BLMIS*), 454 B.R. 317, 329 (Bankr. S.D.N.Y. 2011) (cleaned up).

## Adoption by Reference

Adoption by reference is government by Rule 10 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 10(c). Rule 10(c) states: "A statement in a pleading may be adopted by reference

elsewhere in the same pleading or in any other pleading or motion." The district court has already found that adoption by reference of the entire Fairfield Complaint is proper. *See SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013) ("The Trustee's complaint against Standard Chartered Financial Services incorporates by reference the complaints against Kingate and Fairfield, including the allegations concerning the avoidability of the initial transfers, and further alleges the avoidability of these transfers outright. Thus, the avoidability of the transfers from Madoff Securities to Kingate and Fairfield is sufficiently pleaded for purposes of section 550(a).") (cleaned up).

The Court will follow the district court's instruction. As was explained in *In re Geiger,* pleadings filed in the "same action" may be properly adopted by reference in other pleadings in that action. 446 B.R. 670, 679 (Bankr. E.D. Pa. 2010). The Fairfield Complaint was filed in the "same action" as this adversary proceeding for purposes of Rule 10(c). *Id.* Cases within this SIPA proceeding are filed in the same "proceeding"—the SIPA proceeding. *In re Terrestar Corp.*, No. 16 CIV. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."); *see also Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 610 B.R. 197, 237 (Bankr. S.D.N.Y. 2019) ("The prior decisions within this SIPA proceeding constitute law of the case . . . . "); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019), (citing *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018) (law of the case doctrine applies across adversary proceedings within the same main case), *aff'd*, 943 F.3d 125 (2d Cir. 2019)); *Perez v. Terrastar Corp. (In re Terrastar Corp.)*, No. 16 Civ. 1421 (ER), 2017 WL 1040448, at *4 (S.D.N.Y. Mar. 16, 2017) ("Adversary proceedings filed in the same bankruptcy case do not constitute different cases."), *appeal dismissed*, No. 17-1117 (2d Cir. June 29, 2017);

*Bourdeau Bros., Inc. v. Montagne (In re Montagne)*, No. 08-1024 (CAB), 2010 WL 271347, at

*6 (Bankr. D. Vt. Jan. 22, 2010) ("[D]ifferent adversary proceedings in the same main case do

not constitute different 'cases.'").

     Some courts have worried that wholesale incorporation of a pleading can lead to

"confusing and inconvenient" results. *Hinton v. Trans Union, LLC*, 654 F. Supp. 2d 440, 446–47

(E.D. Va. 2009) (footnote omitted), *aff'd*, 382 F. App'x 256 (4th Cir. 2010). That is not a

concern in these proceedings. Lombard Odier, like many subsequent transfer defendants in this

SIPA proceeding, is uniquely aware of what has been filed in the other adversary proceeding in

this SIPA liquidation. It routinely follows what is happening on a proceeding-wide basis. *See*

Stip., ECF No. 68 (dismissing adversary proceeding based on consolidated extraterritoriality

ruling).

     Allowing the Trustee to incorporate the Fairfield Complaint by reference, does not

prejudice Lombard Odier. If the Court were to dismiss this Complaint and permit the Trustee to

amend his Complaint to include all of the allegations that are already contained in the Fairfield

Complaint, all parties would be prejudiced by delay in these already, overly-prolonged

proceedings. *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No.

09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("Rule 15 places no

time bar on making motions to amend pleadings and permits the amending of pleadings "when

justice so requires.").

     Through the adoption of the Fairfield Complaint, the Trustee has adequately pleaded,

with particularity, the avoidability of the initial transfer due to Fairfield Sentry's knowledge of

BLMIS' fraud. (Fairfield Compl. ¶¶ 314–318, 09-01239, ECF No. 286); *see also SIPC v. BLMIS*

(*In re Consolidated Proceedings on 11 U.S.C. § 550(a)*), 501 B.R. 26, 36 (S.D.N.Y. 2013)

("[T]he Court directs that the following adversary proceedings be returned to the Bankruptcy Court for further proceedings consistent with this Opinion and Order . . . .").

**The Safe Harbor does not bar the avoidance of the Fairfield Initial Transfers**

Defendant has raised the "safe harbor" defense, found in § 546(e), to the Trustee's allegations.  Section 546(e) is referred to as the safe harbor because it protects a transfer that is a "settlement payment ... made by or to (or for the benefit of) a ... financial institution [or] financial participant," or that is "made by or to (or for the benefit of) a ... financial institution [or] financial participant ... in connection with a securities contract."  11 U.S.C. § 546(e).  "By its terms, the safe harbor is a defense to the avoidance of the **initial** transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis added).  However, where the initial transferee fails to raise a § 546(e) defense against the Trustee's avoidance of certain transfers, as is the case here, the subsequent transferee is entitled to raise a § 546(e) defense against recovery of those funds.  *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *3 (Bankr. S.D.N.Y. Aug. 6, 2021).

In light of the safe harbor granted under 11 U.S.C. § 546(e), the Trustee may only avoid and recover intentional fraudulent transfers under § 548(a)(1)(A) made within two years of the filing date, unless the transferee had actual knowledge of BLMIS's Ponzi scheme, or more generally, "actual knowledge that there were no actual securities transactions being conducted."  *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *4 (S.D.N.Y. Apr. 15, 2013).  "The safe harbor was intended, among other things, to promote the reasonable expectations of legitimate investors.  If an investor knew that BLMIS was not actually trading securities, he had no reasonable expectation that he was signing

a contract with BLMIS for the purpose of trading securities for his account.  In that event, the Trustee can avoid and recover preferences and actual and constructive fraudulent transfers to the full extent permitted under state and federal law." *Picard v. Legacy Capital Ltd. (In re BLMIS)*, 548 B.R. 13, 28 (Bankr. S.D.N.Y. 2016) (internal citations omitted), *vacated and remanded on other grounds, Picard v. Citibank, N.A.* (*In re BLMIS*), 12 F.4th 171 (2d Cir. 2021)).  "In sum, if the Trustee sufficiently alleges that the [initial] transferee from whom he seeks to recover a fraudulent transfer knew of [BLMIS ]'[s] fraud, that transferee cannot claim the protections of Section 546(e)'s safe harbor." *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, No. 08-01789 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021).

This Court has already determined that the Fairfield Complaint[3] contains sufficient allegations of Fairfield Sentry's actual knowledge to defeat the safe harbor defense on a Rule 12(b)(6) motion.  *See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789 (CGM), Adv. No. 09-01239 (CGM), 2021 WL 3477479, at *4 (Bankr. S.D.N.Y. Aug. 6, 2021) ("[T]he Trustee has alleged that the agents and principals of the Fairfield Funds had actual knowledge of Madoff's fraud").  In that adversary proceeding, the Court held that "[t]he Trustee has pled [actual] knowledge in two ways: 1) that certain individuals had actual knowledge of Madoff's fraud, which is imputed to the Fairfield Funds; and 2) that actual knowledge is imputed to the Fairfield Funds through 'FGG,' an alleged 'de facto' partnership." *Id.* at *4; *see also* Fairfield Compl. ¶ 320 ("Fairfield Sentry had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 321 ("Greenwich Sentry and Greenwich Sentry Partners had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 322 ("FIFL had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 323 ("Stable Fund had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 324 ("FG Limited had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶

---

[3] The Fairfield Complaint can be found on the docket of adversary number 09-01239-cgm, ECF No. 286.

325 ("FG Bermuda had actual knowledge of the fraud at BLMIS"); ¶ 326 ("FG Advisors had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 327 ("Fairfield International

Managers had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 328 ("FG Capital

had actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 329 ("Share Management had

actual knowledge of the fraud at BLMIS"); Fairfield Compl. ¶ 9 ("It is inescapable that FGG

partners knew BLMIS was not trading securities. They knew BLMIS's returns could not be the

result of the split strike conversion strategy (the "SSC Strategy"). They knew BLMIS's equities

and options trading volumes were impossible. They knew that BLMIS reported impossible, out-

of-range trades, which almost always were in Madoff's favor. They knew Madoff's auditor was

not certified and lacked the ability to audit BLMIS. They knew BLMIS did not use an

independent broker or custodian. They knew Madoff refused to identify any of BLMIS's options

counterparties. They knew their clients and potential clients raised numerous due diligence

questions they would not and could not satisfactorily answer. They knew Madoff would refuse to

provide them with honest answers to due diligence questions because it would confirm the

details of his fraud.  They knew Madoff lied about whether he traded options over the counter or

through the exchange. They knew they lied to clients about BLMIS's practices in order to keep

the money flowing and their fees growing. And they knowingly misled the SEC at Madoff's

direction.").

This Court determined that the Fairfield Complaint is replete with allegations

demonstrating that Fairfield Sentry had actual knowledge that BLMIS was not trading securities.

*See Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv. No. 09-01239

(CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The district court

determined that "those defendants who claim the protections of Section 546(e) through a Madoff

Securities account agreement but who actually knew that Madoff Securities was a Ponzi scheme are not entitled to the protections of the Section 546(e) safe harbor, and their motions to dismiss the Trustee's claims on this ground must be denied." *SIPC v. BLMIS* (*In re Consolidated Proceedings on 11 U.S.C. § 546(e)*), No. 12 MC 115(JSR), 2013 WL 1609154, at *10 (S.D.N.Y. Apr. 15, 2013). And "to the extent that a defendant claims protection under Section 546(e) under a separate securities contract" this Court was directed to "adjudicate those claims in the first instance consistent with [the district court's] opinion." *See* Order, 12-MC-115, ECF No. 119, Ex. A at 24.

This Court is powerless to reconsider this issue, agrees with the district court's reasoning, and finds its holding consistent with *dicta* set forth by the Court of Appeals for the Second Circuit. *See Picard v. Ida Fishman Revocable Trust* (*In re Bernard L. Madoff Inv. Sec. LLC*), 773 F.3d 411, 420 (2d Cir. 2014) ("The clawback defendants, having every reason to believe that BLMIS was actually engaged in the business of effecting securities transactions, have every right to avail themselves of all the protections afforded to the clients of stockbrokers, including the protection offered by § 546(e)."). The Trustee's allegations in the Fairfield Complaint are sufficient to survive a Rule 12(b)(6) motion on this issue.

**The Safe Harbor cannot be used to defeat a subsequent transfer**

Defendant argues that the safe harbor prevents the Trustee from avoiding the subsequent transfer between Fairfield Sentry and Lombard Odier on account of the securities contract between Fairfield and Lombard Odier.

The safe harbor is not applicable to subsequent transfers. "By its terms, the safe harbor is a defense to the avoidance of the *initial* transfer." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018) (emphasis in original); *see also* 11 U.S.C. § 546(e)

(failing to include § 550 in its protections). Since there must be an initial transfer in order for the Trustee to collect against a subsequent transferee, a subsequent transferee may raise the safe harbor as a defense—but only in so far as the avoidance of the initial transfer is concerned. The safe harbor cannot be used as a defense by the subsequent transferee because the Trustee is not "avoiding" a subsequent transfer, "he recovers the value of the avoided initial transfer from the subsequent transferee under 11 U.S.C. § 550(a), and the safe harbor does not refer to the recovery claims under section 550." *Picard v. BNP Paribas S.A. (In re BLMIS)*, 594 B.R. 167, 197 (Bankr. S.D.N.Y. 2018).

Defendant argues that this Court applied the safe harbor to redemption payments made by Fairfield Sentry in *In re Fairfield Sentry Ltd.*, 2020 WL 7345988, at *5 (Dec. 14, 2020) ("*Fairfield III*"). Reliance on this case is misplaced. While many facts overlap between this SIPA liquidation of BLMIS and the foreign liquidation of BLMIS's largest feeder fund, Fairfield Sentry, the legal holdings in these liquidations are not interchangeable. In this case, the Court is analyzing subsequent transfers; in *Fairfield III* the Court was analyzing initial transfers. The safe harbor is not available to be raised as defense to subsequent transfer claims.

In *Fairfield III*, this Court analyzed whether the safe harbor applied to avoidance claims under BVI law[4] to recover "unfair preferences" and "undervalue transactions" and constructive trust claims against a defendant who allegedly "knew or willfully blinded itself to the fact that the [Fairfield Sentry's] BLMIS investments were worthless or virtually worthless." *In re Fairfield Sentry Ltd.*, No. 10-13164 (SMB), 2020 WL 7345988, at *1 (Bankr. S.D.N.Y. Dec. 14, 2020), *reconsideration denied*, No. 10-13164 (SMB), 2021 WL 771677 (Bankr. S.D.N.Y. Feb. 23, 2021). The Court was not considering the safe harbor's effect on subsequent transfer claims

---

[4] Fairfield Sentry liquidated under the laws of the British Virgin Islands ("BVI") and this Court's separate chapter 15 case is ancillary to the primary proceeding brought in the BVI.

brought under § 550 of the Bankruptcy Code.  In the Fairfield Sentry liquidation, Defendant

would be an initial transferee as redemption payments paid by Fairfield Sentry were paid directly

to Multi-Strategy.  *Fairfield III* is not applicable here.

Defendant also argues that this Court permitted a subsequent transferee to raise the safe

harbor as a defense in *Picard v. Fairfield Inv. Fund* (*In re BLMIS*), No. 08-01789(CGM), Adv.

No. 09-01239 (CGM), 2021 WL 3477479, at *3–*7 (Bankr. S.D.N.Y. Aug. 6, 2021).  The Court

never considered whether the safe harbor could be raised by a subsequent transferee in that case.

In *Picard v. Fairfield*, the subsequent transferees were also the principals and insiders of

Fairfield Sentry, the initial transferee.  The Court considered the insider's actual knowledge of

BLMIS's fraud only as it related to whether Fairfield Sentry had actual knowledge of the fraud.

The Court never considered whether the subsequent transferees could raise the safe harbor

defense on their own behalf nor could it have, as § 546 is inapplicable to subsequent transferees.

Defendant is not permitted to raise the safe harbor defense on its own behalf as a

subsequent transferee.

**BLMIS Customer Property**

The Trustee has pleaded that "[b]ased on the Trustee's investigation to date,

approximately $95,595,385 of the money transferred from BLMIS to Fairfield Sentry was

subsequently transferred by Fairfield Sentry to Defendant Lombard Odier."  (Compl. ¶ 41).

Approximately $752,273,917 of the money transferred from BLMIS to Fairfield Sentry was

subsequently transferred by Fairfield Sentry to Fairfield Sigma.  (Compl. ¶ 43).

The exhibits attached to the Complaint provide Lombard Odier with the "who, when, and

how much" of each transfer.  *Picard v. BNP Paribas S.A.* (*In re BLMIS*), 594 B.R. 167, 195

(Bankr. S.D.N.Y. 2018).

The Fairfield Complaint, which is incorporated by reference into this, alleges that the Fairfield Fund was required to invest 95% of its assets in BLMIS.  (Fairfield Compl. ¶ 89); *see also* (Fairfield Compl. ¶ 91) ("From the beginning, to comport with Madoff's requirement for BLMIS feeder funds, Fairfield Sentry ceded control of not only its investment decisions, but also the custody of its assets, to BLMIS.").

The Complaint plausibly alleges that Fairfield Sentry did not have any assets that were not customer property.  Defendants ask this Court to consider allegations made in 90 other complaints filed by the Trustee in this SIPA proceeding.  Reply at 14–15, ECF No. 109; Pincus Decl. ¶ 12, ECF No. 90; June 15, 2022 Hr'g Tr. at 97:12–25.  These complaints have not been adopted by reference by the Trustee in this adversary proceeding and, as such, are not within the Court's power to consider on a Rule 12(b)(6) motion. *Williams v. Time Warner Inc.*, 440 F. App'x 7, 9 (2d Cir. 2011) ("A district court, in deciding whether to dismiss a complaint under Rule 12(b)(6), is generally limited to the facts as presented within the four corners of the complaint, to documents attached to the complaint, or to documents incorporated within the complaint by reference.") (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 776 (2d Cir. 2002)).

Taking all allegations as true and reading them in a light most favorable to the Trustee, the Complaint plausibly pleads that Lombard Odier received customer property because Fairfield Sentry did not have other property to give.  The calculation of Fairfield Sentry's customer property and what funds it used to make redemption payments are issues of fact better resolved at a later stage of litigation.

## Conclusion

For the foregoing reasons, Lombard Odier's motion to dismiss is denied.  The Trustee shall submit a proposed order within fourteen days of the issuance of this decision, directly to

chambers (via E-Orders), upon not less than two days' notice to all parties, as required by Local

Bankruptcy Rule 9074-1(a).



**Dated: June 30, 2022**
**Poughkeepsie, New York**

**/s/ Cecelia G. Morris**
_____
**Hon. Cecelia G. Morris**
**U.S. Bankruptcy Judge**